# **<u>EXHIBIT A</u>**

**HOSPITAL SERVICES AGREEMENT**
between
**CORIZON HEALTH , INC.**
and
**W. A. FOOTE MEMORIAL HOSPITAL**
**d/b/a ALLEGIANCE HEALTH**

This Agreement is by and between **CORIZON HEALTH, INC,** a Delaware corporation (hereinafter referred to as "**CORIZON**") located at 105 Westpark Drive, Suite 200, Brentwood, TN, 37027 and W. A. FOOTE MEMORIAL HOSPITAL, d/b/a **ALLEGIANCE HEALTH** (hereinafter referred to as "**Hospital**"), a health care provider located at 205 N. East Avenue, Jackson, MI 49201.

A.  **WHEREAS, CORIZON** is presently involved in providing health care services to inmates under control of the Department of Corrections (hereinafter referred to as "**Facility**") located in the state of Michigan. In certain circumstances, it is necessary for **CORIZON** to utilize hospital and professional services for its patients for both inpatient and outpatient care.

B.  **WHEREAS, Hospital** is an accredited hospital, which may provide inpatient, outpatient and professional health care related services to the prison community and is amenable to providing such inpatient and outpatient care within its capability for those patients falling within the responsibility of **CORIZON.**

C.  **WHEREAS, CORIZON** wishes to utilize the services of **Hospital** and its professional staff and, correspondingly, **Hospital** wishes to provide such health care services on behalf of those inmates under the care of **CORIZON.**

NOW, THEREFORE**, CORIZON** AND **HOSPITAL** DO HEREBY AGREE AS FOLLOWS:

1.  **CORIZONs UTILIZATION OF HOSPITAL SERVICES:** That for the term of this Agreement, **CORIZON** will use **Hospital** for appropriate inpatient and outpatient services and utilize the physician services of those physicians on its medical staff who are employees and/or independent contractors of the Hospital, who are providing physician services at Hospital's facilities under a contract for clinical services, or for those medical staff members with whom **CORIZON** has entered into an agreement to provide physician services for those inmates who are covered by the health care services agreement between **Facility** and **CORIZON** (hereinafter either "Inmates" or "Inmate", whichever is applicable). Inmate transfer travel arrangements will be made by **CORIZON** only after approval of **CORIZON** Utilization Management Department who will coordinate the inpatient hospitalization, outpatient services and security requirements with the appropriate agency officials.

2.   **REIMBURSEMENT TO HOSPITAL**:   For any inmate admitted or brought to **Hospital** for inpatient, outpatient or professional health care services, by or at the direction of **CORIZON**, the following reimbursements shall apply.

2.1   Inpatient Care:

**CORIZON** shall reimburse **Hospital** for health care services in accordance with reimbursement rates listed in Attachment I and in compliance with the requirements of § 2.3.

2.2   Outpatient Care:

(a) Emergency Services:

The Billed Charges shall be for any and all emergency services including ancillary services rendered by **Hospital** on behalf of an inmate under the care of **CORIZON**

Reimbursement for emergency services will be made in accordance with reimbursement rates listed in Attachment I and in compliance with the requirements of § 2.3.

(b) Outpatient Diagnostic Services:

The Billed Charges shall be for any and all diagnostic services rendered by **Hospital** on behalf of an inmate under the care of **CORIZON**.

Reimbursement for outpatient diagnostic services will be made in accordance with reimbursement rates listed in Attachment I and in compliance with the requirements of § 2.3.

(c) Outpatient Surgery and Outpatient Observation:

**Hospital** agrees that outpatient surgery shall be used in lieu of inpatient surgery when medically appropriate.  **CORIZON** shall be billed for an outpatient service including all pre-operative and post-operative nursing time, supplies/equipment and all operating room and recovery room time.  Reimbursement for outpatient surgery services will made in accordance with reimbursement rates listed in Attachment I and in compliance with the requirements of § 2.3.

In the event an inmate receives treatment at **Hospital** under an outpatient observation status, **CORIZON** shall reimburse **Hospital** for medically necessary observation services not precedent to an inpatient stay at the applicable outpatient rate for a period of up to twenty-three (23) hours from the time of initiation of treatment at **Hospital**. Should the inmate continue his/her hospital stay under such outpatient observation status past the above referenced twenty-three (23) hour initial period or in the event the inmate is admitted as an inpatient directly from observation status, **CORIZON** reimbursement to **Hospital** shall be at applicable inpatient rate.

(d) Professional Services:

Professional health care services rendered by a physician or practitioner employed by **Hospital** shall be reimbursed in accordance with reimbursement rates listed in Attachment I and in compliance with the requirements of § 2.3. If Hospital enters into a contract with a physician or practitioner and such contract authorizes **Hospital** to bill and collect for services rendered by such physician or practitioner, then **CORIZON** shall reimburse for such services in accordance with reimbursement rates listed in Attachment I and in compliance with the requirements of § 2.3.

(e) Durable Medical Equipment and Orthotic Services:

Durable medical equipment and orthotic services provided by **Hospital** shall be reimbursed in accordance with reimbursement rates listed in Attachment I and in compliance with the requirements of § 2.3.

2.3     Timely Reimbursement:

**CORIZON** shall promptly reimburse **Hospital** within thirty (30) days of receipt of a clean claim.    A clean claim shall be defined as a claim that contains no defect, impropriety or lack of substantiating data that prevents timely payment. Interest for late claim payments shall be at a rate of 12% per annum.

2.4     Adjustment to Rates:

Rates Established on a Percentage of Charge Basis - **Hospital** shall notify **CORIZON** of the overall weighted average increase in **Hospital** charges at least thirty (30) days in advance of implementation.  Based on the **Hospital's** overall weighted average increase in charges, health care services that are reimbursed at a percentage of charges will be adjusted.  If **Hospital's** overall weighted average increase in charges is greater than 4%, then effective the first of the month following the **Hospital's** increase in charges, reimbursement rates shall be decreased by the percentage points over the 4% ceiling, using the example calculation below:

| | |
|---|---|
| Hospital Overall Weighted Average Charge Master Increase | 7% |
| Charge Master Increase Ceiling | 4% |
| Excess Increase | 3% |
| Previous % of Billed Charges Payment | 55% |
| Revised % of Billed Charges Payment | 53.4% |
| | (55/1.03) |

The above adjustment shall occur on an annual basis in conjunction with **Hospital's** overall charge master adjustments.

2.5     Billing:

a)  **CORIZON** billing address for claims is as follows:

Corizon Health, Inc
105 Westpark Drive Suite 200
Brentwood, Tennessee 37027
Attn: Claims

Or such other address as **Hospital** is notified by **CORIZON**.

To inquire about the status of claims submitted, please call  **CORIZON** at 888-865-2910.

b) **Hospital** will submit claims to **CORIZON** on a UB04 (CMS1450) for facility services and HCFA 1500 (CMS 1500) for professional services within one year from the date of discharge rendered to the inmate, except in cases of coordination of benefits or other extenuating circumstances.   **CORIZON** will have no obligation to pay claims submitted beyond the filing limit except in cases of coordination of benefits or other extenuating circumstances.

c) **Hospital** will use the most current revenue, procedural (CPT) and HCPCS codes on all forms. **Hospital** will abide by all AMA/CPT code billing standards, rules and regulations that are applicable. Guidelines for billing and payment not specifically detailed within this Agreement will be governed by the most current version of the Centers for Medicare and Medicaid Service's guidelines for the Medicare Program, this includes the adjudication of CPT modifiers and taking the appropriate pricing reductions based on those modifiers as warranted. Multiple surgery guidelines will also be applied based on recommended CMS reductions,. The parties have agreed that packaged services edits ("PSP") shall not be applied to claims submitted by Hospital and for which payment is required to be made on a percentage of charge basis pursuant to Attachment I.

d) **Hospital** agrees to make no additional charges to **CORIZON** patient or other third party payors for services for which **CORIZON** has paid **Hospital,** provided payment has been in accordance to the contract terms.  The fees paid by **CORIZON**, pursuant to Attachment I and § 2.3 represent **Hospital's** full compensation for services rendered to patients under obligation to **CORIZON** for treatment.

2.6     Claims Adjustments:

**CORIZON** shall be entitled to audit claim payments for up to twelve (12) months following the payment or denial of any claim to ensure that services billed to **CORIZON** were rendered and paid in accordance with the terms of this Agreement.For any claims found to be overpaid, **Hospital** agrees that **CORIZON** may recover overpayment made to **Hospital** by **CORIZON** by offsetting such amounts from later payments to Hospital, including, without limitation, making retroactive adjustments to payments to Hospital for errors and omissions relating to data entry errors and incorrectly submitted claims or incorrectly applied discounts.

2.7     Coordination of Benefits:

**CORIZON'S** claims processing system must have the ability to recognize all insurance or payers including Medicaid and coordinate benefits so that eligible inmate claims are billed to third pary insurance or payers including Medicaid, whenever coverage is available either retroactively or prospectively.   In accordance with Medicaid policy (Medicaid Provider Manual, Coordination of Benefits Chapter) Medicaid is the payer of last resort and has the legal right to subrogation in the event an inmate has a form of third party insurance.  Coverage provided by **CORIZON** does not qualify as other insurance and as such is not applicable unless the inmate has no form of third party insurance and is ineligible for Medicaid coverage.

When **CORIZON** is primary, the payment from **CORIZON** shall be accepted by **Hospital** as payment in full for all authorized services. Notwithstanding, **CORIZON** will be considered secondary payor to all other commercial insurance carriers and state Medicaid.  In addition, Medicare is unavailable for incarcerated individuals and therefore not a source for reimbursement. Verification of available benefits will be documented prior to payment by **CORIZON** as much as possible.   **CORIZON** will coordinate payment up to 100% with any other insurance carrier, provided, however, that in no case shall **CORIZON** be responsible for payments beyond its coverage limits.  It is agreed by both parties that **CORIZON** is only responsible for payments for services for the inmates in the custody of **Facility**.  If the inmate/patient is released from custody of **Facility** while hospitalized, then **CORIZON** will cooperate to the greatest extent possible, to determine availability of third party reimbursement.    Cooperation will include **CORIZON'S** notification to **Hospital** of the inmate's release or impending release from the **Facility**. **CORIZON** will cooperate with **Hospital** in providing information which will allow the **Hospital** to seek reimbursement from other parties once the patient is no longer an inmate.

3.     **DISCHARGE SUMMARIES AND ITEMIZED STATEMENTS**:  **CORIZON** will be provided, upon request, with a discharge narrative summary and operative report for all inmates receiving inpatient care and a summary discharge statement for all inmates receiving outpatient services at **Hospital**.    Upon request, Hospital shall provide **CORIZON** with an itemized bill for each such inmate, whether the services provided are inpatient or outpatient in nature, or both.  At its sole expense, **CORIZON** shall be entitled to audit any records necessary to insure that services billed to **CORIZON** were rendered in accordance with the invoice presented. Audits shall be limited to claims that are within one (1) year from the date of payment.

4.     **UTILIZATION REVIEW:**  **Hospital** agrees to abide by the terms of the Utilization Review Program for Inpatient and Outpatient Services established by **CORIZON**, outlined in Attachment II, which is hereby incorporated by reference and made a part of this Agreement.   Preadmission testing, if any, will be provided by **CORIZON** and reviewed by **CORIZON** medical staff prior to admission or the performance of the outpatient services.  Reports of all requested testing will accompany the inmate at the time of admission/appointment.  It is further agreed that **CORIZON** personnel will be

granted access to the medical record, by on-site review, electronically, or by the forwarding of a complete copy to **CORIZON,** for review of inpatient or outpatient services in accordance with the Utilization Review process.

5. **TERM OF THE AGREEMENT:** This Agreement shall begin on 6/13/11 and continue in full force and effect until March 31, 2012. **CORIZON** will notify **Hospital** in advance and in writing, if the contract between **CORIZON** and **Facility** is terminated, but in no event later than ten (10) business days after **CORIZON** becoming aware that the contract between **CORIZON** and **Facility** will be terminated. Either party may terminate this Agreement, without cause, by giving the other party written notice of termination, not less than ninety days (90) days prior to the effective date thereof. This Agreement, and all terms and conditions hereunder, shall automatically renew unless either party, at least thirty (30) days prior to the expiration date, notifies the other in writing of its desire not to extend or renew this Agreement. *or renegotiate* JW 9/30/11  MOB 10/1/11

**CORIZON** shall have the right to terminate immediately if **Hospital**:

a) suffers revocation, termination or suspension of any of its license or certification, JCAHO accreditation, or contract to participation in the Medicare or Medicaid programs.
b) is found guilty of a criminal offense.
c) is found liable for gross misconduct in providing care.

**Hospital** shall have the right to terminate this Agreement in the event **CORIZON** is in material breach of this Agreement. **Hospital** shall provide **CORIZON** with ninety (90) days' advance written notice. Failure of **CORIZON** to cure such breach within the ninety (90) day period shall result in the Agreement being terminated at the end of such period.

**Hospital** shall have the right to terminate this Agreement with ninety (90) days' advance written notice in the event the parties are not able to reach an agreement on an adjustment to rates, as provided in Section 2.4(b).

Following termination of this Agreement, **Hospital** shall continue to provide services to any inmate who is under active treatment either until such treatments are completed or responsibility is assumed by another participating provider. **Hospital** shall be compensated for services in accordance with the terms in Attachment I.

6. **STAFF MEMBERSHIP:** **Hospital** hereby agrees that **CORIZON** Medical Director shall be considered for staff membership without privileges at **Hospital** during the term of this Agreement. Approval for staff privileges shall be determined by the guidelines set by the medical staff by-laws of the **Hospital**.

7. **NOTICES:** All notices or other writings required under this Agreement shall be deemed to have been made when sent by certified mail to the parties at the following addresses:

> **Hospital**: Allegiance Health
> 205 N. East Avenue
> Jackson, MI 49201
> Attn: President and CEO
>
> With Copies to:
> Allegiance Health
> 205 N. East Avenue
> Jackson, MI 49201
> Attn:  General Counsel
>
> **CORIZON:**
> Corizon Health, Inc.
> 105 Westpark Drive, Suite 200
> Brentwood, TN  37027
> Attn: General Counsel

With courtesy copy to:  Vice President, Provider Operations at the above address.

8. **MDOC SECURITY MEASURES:** Hospital and its employed physicians must follow MDOC security procedures which may require the use of armed custody officers.  All services provided inside MDOC facilities including Duane Waters require compliance with the following procedures:
   a) Obtainment of a successful Law Enforcement Information Network (LEIN)
   b) Required entry into correctional facilities
   c) Direct contact with prisoners
   d) Possible contact parolees

Hospital must comply with the security access requirement of each individual State correctional facility.

9. **SECURE UNIT:**   The unit must have written procedures in place to address the following:
   a) An outpatient holding area adjacent to the secure unit such that security staff may be shared with the secure unit
   b) Secure Unit Inpatient Hospital Services
   c) Secure Unit Inpatient Physician/Specialty Services
   d) Secure Unit Outpatient Hospital services
   e) Secure Unit outpatient Physician/Specialty Services
   f) Secure Unit Hospital Intensive Care Services
   g) Secure Unit Hospital Emergency Room Hospital Care
   h) Secure Unit Hospital Emergency Room Physician Services
   i) All secure Unit hospital necessary ancillary/support services

10. **MEETINGS AND DISPUTE RESOLUTION:**    Representatives from the **Hospital**, **Facility**, and **CORIZON** will meet on a routine basis, upon the request of the **Facility**, or either Party to this Agreement to discuss items including but not limited to; issues related to communication, utilization, quality management of the secure unit and all healthcare delivery indicated in this Agreement.

10.1 Dispute Resolution:

In the event of a dispute under this Agreement, the parties will work together in good faith to resolve the dispute first, through the established Appeals process. **Hospital** shall send a written appeal to **CORIZON** detailing the date(s) of service, patient name, amount paid and the amount of the underpayment or the reason for dispute. The appeal will be investigated and a response given within forty-five (45) days. Claims are no longer eligible for appeal requests after forty-five (45) days from **CORIZON** remittance.

The appeal should be emailed to ProviderAppeals@CorizonHealth.com or mailed via the U.S. postal service to:

Corizon Health, Inc
Attn: Appeals Coordinator
105 Westpark Drive, Suite 200
Brentwood, TN 37027

Should the **Hospital** disagree with the initial appeal response they may submit a second level appeal to the same address. For consideration, the second level appeal must be received within fifteen days (15) of the of the initial appeal response.

If then, after the Appeals process has been exhausted and the parties have not come to resolution. The parties will meet no later than thirty (30) days from the second level appeal decision to discuss the problem with the appropriate staff from the **Hospital** and **CORIZON**. In the event that the meeting does not resolve the issue the **Hospital** may pursue any of its rights or remedies under the law.   If agreed upon in writing by all of the parties, the dispute may be resolved through arbitration.

11. **ASSIGNMENT:** The parties to this Agreement may not assign and/or delegate, sell or transfer any of their rights, duties or responsibilities under this Agreement without the prior written consent of the other party and the parties agree that any such assignment and/or delegation is void and shall have no force or effect.

12. **APPLICABLE LAW**: For conflict of law purposes, the laws of the State of Michigan shall apply in interpreting the terms of this Agreement.

13. **RESPONSIBILITY OF EACH PARTY:**  Each party is responsible for its acts or omissions, and neither party shall be called upon to assume the other's liability.

14. **CONFIDENTIAL INFORMATION**:  **CORIZON and Hospital** agrees not to disclose or in any way use, or allow any other person to disclose or use, confidential information of or concerning **CORIZON** and **Hospital** or the various facilities either during or after

the term of this Agreement without either Parties prior express written consent or except as otherwise required by law, or ordered by a court of competent jurisdiction. Confidential information includes, but is not limited to, legal or claim data, financial data, methods of operation, policies and procedures. **Hospital** shall not copy or remove **CORIZON** documents for its own use or for the use of others, nor shall **Hospital** make use of or allow or assist any other person or company to make use of any **CORIZON** procedure or program, including but not limited to those relating to utilization review or quality improvement, except as authorized under this Agreement. **CORIZON** and **Hospital** shall not disclose, or allow others to disclose, the terms of this Agreement, except, as it is necessary to perform this Agreement or to obtain accounting, legal or tax advice from its professional advisors as otherwise required by law, or as ordered by a court of competent jurisdiction.

Both Parties shall comply with all procedural activities that may be required to achieve compliance with the Health Insurance Portability and Accountability Act of 1996 (HIPAA) rules and regulations as they may apply to prisons and jails.

15. **SECURITY PROVISIONS:**  Responsibility for the security of inmate patient(s) being treated on either an inpatient or outpatient basis at **Hospital** will be provided by **Facility** staff.  Neither **CORIZON** nor **Hospital** shall be responsible for providing such security but both shall be responsible for adhering to security regulations established by the **Facility**.

16. **INSURANCE:**

    **(a) Hospital** shall be insured at all times under a general and professional liability insurance policy or policy of self-insurance covering services or duties to be performed under this Agreement, which provides a minimum coverage of $1,000,000 per claim and $3,000,000 in the annual aggregate, or a higher amount if such is required by state or local law.  A copy of the Certificate of Insurance will be submitted to **CORIZON** at its request.  **CORIZON** shall be provided thirty (30) days' notice of any material policy reduction, material change in coverage, cancellation or refusal to renew the coverage. The Parties agree that the **Hospital's** program of self-insurance funded in accordance with actuarial recommendations will suffice for the purposes of this Agreement.

    **(b) CORIZON** shall be insured at all times under a general and professional liability insurance policy or policy of self-insurance covering services or duties to be performed under this Agreement, which provides a minimum coverage of $1,000,000 per claim and $3,000,000 in the annual aggregate, or a higher amount if such is required by the state or local law.  A copy of the Certificate of Insurance will be submitted to Hospital at its request.  **Hospital** shall be provided thirty (30) days' notice of any material policy reduction, material change in coverage, cancellation or refusal to renew the coverage.

    **(c) Notification of Claims.**  Both Parties shall promptly notify the other of any knowledge regarding any event that may result in a claim, or any claim or suit actually made, against either of them with respect to or arising from the services provided under this Agreement.

17. **Independent Contractor Status.**  It is mutually understood and agreed that at all times during this Agreement, Hospital shall be acting and performing services as an

independent contractor.  The relationship between the Parties hereto shall not be that of principal and agent, master and servant, nor employer and employee or any other type of employment relationship.

18. **Compliance:**

(a) **Avoidance of Fraud and Abuse.**  The parties enter into this Agreement with the intent of conducting their relationship in full compliance with applicable state, local, and federal law including the Medicare/Medicaid anti-fraud and abuse statutes. Notwithstanding any unanticipated effect of any of the provisions herein, neither party will intentionally conduct itself under the terms of this Agreement in a manner to constitute a violation of the Medicare and Medicaid fraud and abuse provisions.  Further, if legislation is passed, the effect of which would be to hinder Hospital's ability to obtain reimbursement from Medicare/Medicaid due to the existence of this Agreement, or if this Agreement becomes illegal under any subsequent law or regulation, then this Agreement shall terminate immediately.

(b) **Tax-Exempt Status.**  Notwithstanding anything to the contrary, Hospital may modify or terminate this Agreement at any time, without liability, if it reasonably determines that its continued participation in this Agreement could or reasonably may threaten the federal tax exemption of Hospital or any entity affiliated with Hospital under Internal Revenue Code Section 501(c)(3) or threaten any other relevant tax exemption these entities now or hereafter may enjoy.

(c) **Regulatory Compliance Hotline and Reporting. Hospital** maintains a corporate compliance program to prevent, detect and remedy activities and conduct that are non-compliant with legal, regulatory and/or ethical requirements and standards.  **CORIZON** has been advised that **Hospital** maintains an anonymous toll-free hotline (1-877-9COMPLY) and employs a Compliance Officer (517.768.7744) for the reporting of activities or conduct that may involve non-compliant behavior.  **CORIZON** shall report any instances of potential non-compliant activity, and shall similarly inform and require any subcontractors, employees or agents to report such activity.

(d) **Exclusion From Government Programs.**  To the best of each Party's information, knowledge and belief, neither Party is, nor employs or contracts with:

(i)  any individual or entity excluded from Medicaid or Medicare participation under §§ 1128 (42 USC 132a-7) or 1128A (42 USC 1320a-7a) of the Social Security Act for the provision of health care, utilization review, medical social work, or administrative services;

(ii) any entity for the provision of such services (directly or indirectly) through an excluded individual or entity; or

(iii)any individual or entity excluded from Medicaid participation by the MDCH.

Both Parties agree to immediately notify the other Party if and when that Party falls out of compliance with §18 (d) (i), (ii), or (iii).

19.   **ENTIRE AGREEMENT:**  This written Agreement expresses the entire understanding between the parties with reference to its subject matter.  This written Agreement, which may be amended only in writing signed by all parties, suppresses all prior negotiations and understandings.

**The rest of this page was intentionally left blank**

**IN WITNESS WHEREOF**, the parties have executed this Agreement effective as of that Commencement Date first above written.

**CORIZON HEALTH, INC**

By:  Mason Gill

_____
Regional Vice President

Date: _____10/6/11_____

By: M. Therese Brumfield

_____
Vice President, Provider Operations

Date: _____10/10/11_____

**W. A. FOOTE MEMORIAL HOSPITAL
ALLEGIANCE HEALTH**

By: Jeanne' Wickens

_____
Sr. VP and Chief Financial Officer

Date: _____9-30-11_____

TIN: 38-2027689

NPI: ___105340 3402____

**CONTRACT NOT VALID WITHOUT CORPORATE AND REGIONAL SIGNATURES**

Hospital Services Agreement (DRG)
Revised: 12/8/08

**ATTACHMENT  I**

**RATES**

INPATIENT SERVICES:

Allegiance Health shall only admit inmates to the Secure Unit, except when the following situations exist:

1.  Inmate requires Critical Care or CUB Unit services.

2.  All beds are full on the Secure Unit.  Custody levels will be taken into consideration for priority placement on the Secure Unit.

3.  Inmate needs close observation and/or immediate interventions which cannot be provided behind a closed, locked door.

For Inpatient Health Services, **CORIZON** will reimburse **Hospital** at a base rate of $8,145 using Medicare MSDRG weight designations.  MSDRG weights will be adjusted consistent with the annual Medicare adjustment effective October 1st of each year.  Outliers shall be reimbursed in accordance with the methodology noted below.  Reimbursement reductions as a result of a transfer MSDRG are only applicable when inmates are transferred to another licensed Medicare facility; such as acute care hospital, long-term care hospital, rehabilitation, psychiatric or skilled nursing facility.  Reimbursement reductions shall not apply when inmates are discharged to Duane Waters Health Center or other prison facilities.

For Outliers, **CORIZON** will reimburse **Hospital** as follows:  if the amount of Billed Charges less MSDRG reimbursement is greater than $50,000, the Billed Charges exceeding the MSDRG payment will be reimbursed at forty percent (40%) of Billed Charges.

**Hospital** shall be held harmless and be reimbursed in accordance with this Section for inpatient hospital days resulting in inability to discharge inmate due to **Facility** procedural issues, such as lack of guards or transportation to transfer inmate back to **Facility**.

As the CMS MSDRG numeric assignment system changes and converts MSDRGs to newly developed grouper numbers, rates specified in this Agreement will remain as is. **CORIZON** will crosswalk the expired MSDRG to the new MSDRG, per CMS and process the claim.

JW 9/30/11

MJ 10/1/11

The base rate will be adjusted consistent with the Medicare annual market basket increase, not to exceed 3 percent, effective October 1st of each year. This annual inflator will not be affected or reduced by the Healthcare Reform Act reductions or other CMS reductions annually.

OUTPATIENT SERVICES:

Emergency Room:

> **CORIZON** will reimburse **Hospital** at 55.0% of Charges.
> Any ER visit, which results in an inpatient admission, will be reimbursement under the applicable inpatient reimbursement.

Diagnostic Services:

> MRI case rates per test:
> - Without contrast        $   658.70
> - With contrast            $   807.96
> - With and without contrast   $1,018.87
>
> CT Scan case rates per test
> - Without contrast        $367.75
> - With contrast            $581.90
> - With and without contrast   $644.64
>
> The above rates do not apply to MRA and CTA services.
>
> An automatic annual CPI inflator of 4% shall apply to the above fixed price items, effective upon automatic renewal.

SURGICALLY IMPLANTABLE ITEMS:

> For outpatient surgery, any implantable item shall be reimbursed at 100% of billed plus 1.25% for mark-up. Invoice is not required; however, **Hospital** must submit the appropriate CPT/HCPC code on the claim so billed amount may be verified.

All Other Outpatient Services:

> **CORIZON** will reimburse **Hospital** at 55.0% of Charges for all outpatient services with the exception of the MRI and CT Scan aforementioned.

PROFESSIONAL SERVICES:

Professional services provided by employed or contracted physicians pursuant to Section 2.2(d) shall be reimbursed at one hundred and thirty percent (130%) of the applicable year, geographically adjusted CMS professional fee schedule.

Professional services provided by employed audiologists shall be reimbursed at one hundred and thirty percent (130%) of the applicable year, geographically adjusted CMS professional fee schedule.  Dispensing fees shall be reimbursed as follows:

| | |
|---|---|
| V5014 | $167.44 |
| V5241 | $543.76 |
| V5264 | $78.00 |

V5267          $30.00

Professional therapy services provided by employed therapists provided at the Duane Waters specialty clinic shall be reimbursed as follows:

| | |
|---|---|
| Physical therapy services | $60 per hour |
| Physical therapy assistant or athletic trainer services | $35 per hour |
| Occupational therapy services | $42 per hour |

An automatic annual CPI inflator of 4% shall apply to the above fixed price items, effective upon automatic renewal.

DME and ORTHOTIC SERVICES:

Durable Medical Equipment and orthotic services shall be reimbursed at 100% of the then current year Medicare fee schedule.

**The rest of this page was intentionally left blank.**

## ATTACHMENT II

## UTILIZATION REVIEW

### SECTION I.  GENERAL INFORMATION

Corizon Health Inc.'s Utilization Review Program (hereinafter **"CORIZON UR"**) utilizes nationally accepted clinical care guidelines (copies of which have been provided to **Hospital**) to determine justification of admission and necessity of services. Continued stay is based upon severity of illness, necessity of service and level of care provided by **Hospital**.

The Hospital Utilization Review Department (hereinafter referred to as **"Hospital UR"**) is requested to assist **CORIZON UR** in obtaining current clinical information on all hospitalized patients who are in the custody of the **Facility**.  Medical records may be provided by electronic or remote access means.

**CORIZON UR** may request the medical record (selected portions or its entirety) upon discharge of the patient from the Hospital to perform retrospective review or quality assurance reviews as needed. Such requests shall be in writing to the Medical Records Department. Separate written consent of the patient is not necessary when **CORIZON** is the primary payor of the claim.

All patient information received by the hospital, and likewise by **CORIZON**, will remain privileged and confidential.  Information will not be disclosed to unauthorized parties.

**Hospital** shall be held harmless and be reimbursed in accordance with Attachment I for inpatient hospital days resulting in inability to discharge inmate due to **Facility** procedural issues, such as lack of bed availability at Duane Waters, lack of guards or transportation to transfer inmate back to **Facility**.

**CORIZON** shall provide **Hospital** with thirty (30) days prior written notice of any changes to the **CORIZON UR** program.

### SECTION II.  ADMISSION AND CONTINUED STAY REVIEWS

**CORIZON UR** requests notification of all admissions by the Admissions Office during normal working hours.  Notification of emergency admissions may take place no later than the next working day. If **CORIZON UR** initially learns of an admission through its staff, it will contact the Hospital Admissions Office for verification.  All elective/planned admissions will be given an authorization number within twenty-four (24) hours or the next business day by **CORIZON UR** for billing purposes; emergency admissions will not be given an authorization number. Verification of authorization numbers may be obtained from **CORIZON UR** during normal working hours (Monday through Friday 8:30 a.m. - 6:00 p.m.) by calling (800) 729-0069. During non-business hours admissions may be reported by Fax to (615) 376-1165.

**CORIZON UR** will contact the **Hospital UR** to request review during the **Hospital UR** Office's normal working hours.  Reviews are requested at a minimum upon admission to the **Hospital**, with continued stay reviews on Mondays, Wednesdays and Fridays.  Periods between reviews may be more or less frequent if the patient's condition indicates such and both the **CORIZON UR** Representative and the **Hospital's UR** Representative are in agreement.    If clinical information provided does not meet the criteria for continued **Hospital** stay **Hospital** UR will be

notified by **CORIZON UR** that inmate discharge (and return to the prison facilities) is appropriate.   An opportunity for the attending physician or **Hospital UR** to provide further information will be given.   A **CORIZON** physician advisor is available Monday - Friday for discussion of the case.   **Hospital** shall not be subject to any payment denials or other financial penalties in the event that the inmate cannot be discharged due to **CORIZON** or **Facility** procedural delays including, but not limited to, lack of transportation from **Hospital** to **Facility**, lack of availability of **Facility** guards, or delay in discharge due to **CORIZON** or Facility physician orders.

**CORIZON UR** Department shall respond to all authorization requests within twenty-four (24) hours or the next business day. Failure of **Hospital** to obtain authorization (either upon admission or continued stay) shall not result in denial of payment in cases where the **Hospital** demonstrates that the services rendered were medically necessary.

## SECTION III.  DENIALS AND RECONSIDERATION

The **CORIZON** Utilization Review Department will notify the **Hospital UR** Department when the decision to issue a denial of payment for services has been made.  Such notification shall be by telephone followed by written letter indicating the reason(s) for denial within twenty-four (24) hours or the nextbusiness day.  Denials may be issued for "Never Events" under Medicare's standard definition. Denials may also be issued for delay of service and care rendered not associated with the primary diagnosis. Denials may not be issued for delay of discharge associated with **CORIZON** or **Facility** procedural issues, including but not limited to, lack of transportation from **Hospital** to **Facility,** lack of availability of Facility guards, or delay in discharge due to **CORIZON** or Facility physician orders.

The Hospital may request reconsideration for denial of services following the Appeal and Appeals policy outlined in Section 10 .

## SECTION IV.  COVERAGE ISSUES

**CORIZON** will pay for primary and related diagnosis only.  All non-emergent care not related to the primary diagnosis must be prior approved for payment by the **CORIZON UR** Department Representative.  **CORIZON UR** Department shall respond to all authorization requests within twenty-four (24) hours or the next business day.

**CORIZON** does not provide payment for services which can be provided by the Prison Health Care Infirmary, however, if **CORIZON** has authorized and referred the inmate to **Hospital,** payment shall be made in accordance with this Agreement.

**CORIZON** does not provide payment for services for the following:

* Sterilizations/Tubal Ligations
* Non-authorized Elective Surgical Procedures
* Cosmetic Surgery
* Infertility Studies
* Organ Transplants
* Care of Newborn (unless by specific contract)
* Psychiatric Admissions (unless by specific contract)

    \*        Psychiatric Holds (extended stay due to psychiatric illnesses following general medical/surgical or emergent care.  Psychiatric care will be provided at the Jail/Prison.)

    \*        Pass or Court Days (patient temporarily released from hospital care to attend court, etc.)

## SECTION V.  EXPIRATION OF SENTENCE

The **CORIZON UR** Department will notify the **Hospital** by telephone followed by written confirmation of all inmates released from the custody of **Facility**.  **CORIZON** is not responsible for payment of medical care provided after the time of release from custody of **Facility,** provided that **CORIZON** complies with the requirementsset forth below.

If the inmate/patient is released from custody of **Facility** while hospitalized, then **CORIZON** will cooperate to the greatest extent possible, to determine availability of third party reimbursement.  Cooperation will include **CORIZON** notification of **Hospital** with information concerning the inmate's release date or impending release date from the custody of **Facility**.  **CORIZON** will cooperate with **Hospital** in providing information which will allow the **Hospital** to seek reimbursement from other parties once the patient is no longer an inmate.

## SECTION VI.  OUTPATIENT SERVICES

**CORIZON** provides precertification of all non-emergent outpatient services.  Services, which are provided without pre-authorization, shall be clinically audited for necessity and justification prior to payment.  **CORIZON UR** Department will work with the outpatient clinic areas to provide verification of authorized services during normal working hours.  **CORIZON UR** Department shall respond to all authorization requests in writing within twenty-four (24) hours or the next business day.

## SECTION VII.  QUALITY ASSURANCE

Medical records will be requested upon discharge for the **CORIZON** Medical Review Committee to review when **CORIZON** feels that review is warranted.

The request for medical records will be in writing and directed to the Director of Medical Records and the designated Hospital Representative.  Medical records may be provided by electronic or remote access means.  QA Studies of records will be prepared and forwarded to the Hospital Representative when **CORIZON** feels that such is warranted.

In an effort to assist with quality improvement efforts, **CORIZON** shall provide **Hospital** with semi-annual reports of the original incarceration **Facility** that resulted in an inpatient admission at **Hospital.**

## FIRST AMENDMENT TO HOSPITAL SERVICES AGREEMENT

### BETWEEN

### CORIZON HEALTH, INC

### AND

## W.A FOOTE MEMORIAL HOSPITAL
## d/b/a HENRY FORD ALLEGIANCE HEALTH

**THIS FIRST AMENDMENT** (this "Addendum") is made and entered into this first day of September, 2015, by and between Corizon Health, Inc a Delaware corporation with principal offices located at 105 Westpark Drive, Suite 200, Brentwood, TN 37027, acting for itself or on behalf of any/all/other affiliated companies (hereinafter collectively referred to as "Corizon Health") and W.A. Foote Memorial Hospital, d/b/a Henry Ford Allegiance Health (hereinafter referred to as "Hospital") a Michigan health care provider with principal offices located at 205 N. East Avenue, Jackson, MI 49201.

### RECITALS

**WHEREAS**, Corizon Health and Hospital have entered into an Agreement dated the 13th day of June, 2011, whereby the Hospital agrees to provide health care services to inmates of the Michigan Department of Corrections (MDOC).

**WHEREAS**, Corizon Health and Hospital agree to amend the Hospital Services Agreement to include the provision of onsite Audiology Professional Clinic Services for Michigan Department of Corrections Inmates at Duane Waters Health Center. This Agreement shall be effective May 1, 2016.

**NOW THEREFORE**, in consideration of the mutual covenants and agreements contained herein, the parties agree as follows:

1. **Audiology and Hearing Aid Service Rates** shall now include the following:

| Professional Services | Hourly Reimbursement Rate |
|---|---|
| Audiologist Professional | $49.86 per hour (Rate shall be adjusted on an annual basis, effective January1 of each subsequent year, to incorporate a 2% inflationary increase.) |
| Mileage | Travel expenses to and from MDOC facilities are paid at the most current IRS mileage rate. Corizon Health shall provide expense reporting forms and processes to Audiology Professional for mileage to be paid directly to the Audiology Professional. |
| Hearing Aid / Hearing Aid Supplies | Hearing aids and hearing aid related supplies are paid at invoice cost plus administrative handling mark-up, which will be reflected in the billed amount on the monthly invoice. |

1

Onsite hearing services shall be invoiced to the following address.  Corizon shall reimburse Hospital within thirty (30) days of receipt of the invoice.

> Corizon Health
> Attn: Mason Gill
> 6452 Millennium Drive, Suite 100
> Lansing, MI  48917

2. **Medical Record Documentation** of Audiologist Professional Services provided pursuant to this Agreement shall be documented in the MDOC medical record system; Corizon shall make arrangements for appropriate access to the MDOC medical record system.  Audiology Professional shall maintain accurate and timely medical records in accordance with MDOC rules and regulations and in accordance with all federal and state laws regarding confidentiality and disclosure of protected health information in a manner which safeguards privacy.  In the event of an audit of Audiology services, Corizon and MDOC shall provide access to or provide copies of such records, upon reasonable request.

3. **Onsite Clinic** space and appropriate office related supplies shall be arranged by Corizon and made available to Audiology Professional.  Audiology Clinic Services at Duane Waters shall be provided two (2) Thursdays per month from 1 pm to 4 pm unless otherwise agreed upon in writing by the parties.

4. Except as to the terms and conditions updated by this Amendment, all of the terms and conditions of the Agreement are declared by the parties to be in full force and effect.

**IN WITNESS WHEREC**    he parties hereto have duly executed this    endment as of the day
and year first above written.

**CORIZON HEALTH, INC.**

Mason Gill
Vice President Operations

4/25/16

Date

M. Therese Brumfield
Vice President, Provider Operations

5-4-16

Date


**W.A. FOOTE MEMORIAL HOSPITAL,
d/b/a Henry Ford Allegiance Health**

Jeanne' Wickens
CFO & Sr. VP Finance & Strategy

4-15-16

Date

3

## SECOND ADDENDUM TO HOSPITAL SERVICES AGREEMENT

### BETWEEN

### CORIZON HEALTH, INC

#### AND
#### W.A FOOTE MEMORIAL HOSPITAL
#### d/b/a HENRY FORD ALLEGIANCE HEALTH

THIS SECOND ADDENDUM TO THE HOSPITAL SERVICES AGREEMENT ("Addendum") is entered into by and between CORIZON HEALTH, INC, ("**CORIZON**"), a Delaware corporation located at 105 Westpark Drive, Suite 200, Brentwood, TN, 37027 and W.A. FOOTE MEMORIAL HOSPITAL, d/b/a HENRY FORD ALLEGIANCE HEALTH ("**Hospital**"), a healthcare provider located at 205 N. East Avenue, Jackson, MI 49201 is made effective August 1, 2016.

### RECITALS

As provided in the Hospital Services Agreement between **CORIZON** and **Hospital**, **CORIZON** is presently involved in providing health care services to inmates under control of the Department of Corrections located in the state of Michigan. **CORIZON** wishes to utilize the services of **Hospital** and its professional staff and, correspondingly, **Hospital** wishes to provide such health care services on behalf of those inmates under the care of **CORIZON**. **Hospital** desires to amend the Hospital Services Agreement to amend the Agreement as set forth below.

### AGREEMENT

The following section is replaced as set forth below:

2.7 Coordination of Benefits:

> **CORIZON'S** claims processing system must have the ability to recognize all insurance or payers including Medicaid and coordinate benefits so that eligible inmate claims are billed to third party insurance or payers including Medicaid, whenever coverage is available either retroactively or prospectively. In accordance with Medicaid policy (Medicaid Provider Manual, Coordination of Benefits Chapter) Medicaid is the payer of last resort and has the legal right to subrogation in the event an inmate has a form of third party insurance. Coverage provided by **CORIZON** does not qualify as other insurance and as such is not applicable unless the inmate has no form of third party insurance and is ineligible for Medicaid coverage.

> When **CORIZON** is primary, the payment from **CORIZON** shall be accepted by **Hospital** as payment in full for all authorized services. Notwithstanding, **CORIZON** will be considered secondary payor to all other commercial insurance carriers and state Medicaid. In addition, Medicare is unavailable for incarcerated individuals and therefore not a source for reimbursement. Verification of available benefits will be documented prior to payment by **CORIZON** as much as possible. **CORIZON** will coordinate payment up to 100% with any other insurance carrier, provided, however, that in no case shall **CORIZON** be responsible for payments beyond its coverage limits. It is agreed by both parties that **CORIZON** is only

responsible for payments for services for the inmates in the custody of **Facility**. If the inmate/patient is released from custody of **Facility** while hospitalized, then **CORIZON** will cooperate to the greatest extent possible, to determine availability of third party reimbursement. Cooperation will include **CORIZON'S** notification to **Hospital** of the inmate's release or impending release from the **Facility**. **CORIZON** will cooperate with **Hospital** in providing information which will allow the **Hospital** to seek reimbursement from other parties once the patient is no longer an inmate.

When **CORIZON** is considered a secondary payer to state Medicaid, **CORIZON** acknowledges that state Medicaid claims may be subject to a Medicaid Recovery Audit (RAC) or similar process.   From time to time during a Medicaid Recovery Audit it may be determined that services were rendered in an incorrect setting and funds are recovered. **CORIZON** authorized services are payable to the **Hospital**. **CORIZON** acknowledges that if in said Audit it is identified that the setting is not reimbursable by Medicaid for incarcerated individuals; **CORIZON** will be responsible for reimbursement in the setting as identified by Medicaid during the audit,  timely filing guidelines will apply based on the Medicaid Recovery Audit determination letter. Claims associated with these services will not follow the Dispute Resolution file limit outlined in 10.01 of the Agreement, claims for Medicaid Recovery Audit are eligible for appeal requests within one hundred and eighty (180) days from the Medicaid Recovery Audit determination letter or final Medicaid Appeal response date. **CORIZON** agrees to coordinate payment on the claims currently requested at the time the amendment was signed.

(The remainder of this page is intentionally blank)

**Hospital**

Name of Facility _____ W.A.Foote Memorial Hospital d/b/a Henry Ford Allegiance Health _____

Authorized Signature _____ *Kevin Leonard* _____

Name (please print) _____ Kevin Leonard _____

Title _____ VP Finance _____

Date _____ Sept 29 2016 _____

Federal Tax ID # _____ 38-2027689 _____

**Corizon**

Authorized Signature: _____ *[signature]* _____

Name: _____ Moses Gill _____

Title: _____ VP of Operations _____

Date: _____ 10/3/16 _____

### THIRD ADDENDUM TO HOSPITAL SERVICES AGREEMENT

### BETWEEN

### CORIZON HEALTH, INC

### AND

### W.A FOOTE MEMORIAL HOSPITAL
### d/b/a HENRY FORD ALLEGIANCE HEALTH

**THIS THIRD AMENDMENT** (this "Addendum") is made and entered into this 1 day of September, 2016, by and between **CORIZON** Health, Inc. a Delaware corporation with principal offices located at 105 Westpark Drive, Suite 200, Brentwood, TN 37027, acting for itself or on behalf of any/all/other affiliated companies (hereinafter collectively referred to as "**CORIZON**" or "**CORIZON HEALTH**") and W.A. Foote Memorial Hospital, d/b/a Henry Ford Allegiance Health (hereinafter referred to as "**Hospital**") a Michigan health care provider with principal offices located at 205 N. East Avenue, Jackson, MI 49201.

### RECITALS

**WHEREAS, CORIZON HEALTH** and **Hospital** have entered into an Agreement dated the 13th day of June, 2011, whereby the **Hospital** agrees to provide health care services to inmates of the Michigan Department of Corrections.

**WHEREAS, CORIZON HEALTH** and **Hospital** agree to amend the Hospital Services Agreement to now include onsite Oncology Clinic physician and nurse services for oncology patients at Duane Waters Health Center.

**NOW THEREFORE**, in consideration of the mutual covenants and agreements contained herein, the parties agree as follows:

**Hospital** agrees to provide onsite Oncology Clinic physician and nurse services for oncology patients at Duane Waters Health Center.

**Attachment I Rates** shall be amended to include the following:

### ONCOLOGY CLINIC:

| Position | Reimbursement Rate |
|---|---|
| Oncology Physician | $281.00/hour |
| Oncology Medical Director | $415.00/hour |
| Registered Nurse (RN) | $53.00/hour |
| Initial Set Up | $5000.00/one-time fee only paid upon the opening of the clinic |
| Mileage | Travel expenses to and from MDOC facilities are paid at the most current IRS mileage rate. |

1

Invoices for onsite oncology clinic services shall be mailed to the below address or emailed to Mason.Gill@CorizonHealth.com.

**CORIZON HEALTH**
Attn: Mason Gill
6452 Millennium Drive, Suite 100
Lansing, MI 48917

1. **Exclusivity:** All inpatient and outpatient oncology-related services provided to Duane Waters inmates shall be done exclusively at Allegiance Health except when services are not available.

2. The clinic day and clinic hours when onsite oncology services shall be provided will be mutually agreed to by both parties. Initial start date of the oncology clinic will be agreed upon by the parties.

3. **CORIZON** will provide a chemo certified RN on the agreed upon clinic days during the clinic hours. **Hospital** will provide a oncology certified RN on the agreed upon clinic days during the clinic hours.

4. Treatment plan will be developed in accordance with nationally accepted standards of care and mutually approved by **Hospital** and **CORIZON**. Denials by **CORIZON** to oncology and radiation treatment plan including follow-up care outlined by **Hospital** will require notification to **Hospital** and a peer to peer conversation between the treating physician and **CORIZON** Oncology Director. Notification shall be by telephone followed by written letter indicating reason for denial or change in treatment plan within twenty-four hours or next business day. Appeal process as outlined the Agreement will be followed when the parties do not agree.

5. MDOC will follow the same security measures and protocols for all providers rotating through the Duane Waters Health Center. Duane Waters Health Center will include additional/relocated security cameras as agreed upon by the parties.

6. Pharmacy services will be agreed upon and added to amendment prior to the start date of the clinic.

7. Parties agree to partner on telemedicine services in the future.

The following is amended to include the following:

## 2. REIMBURSEMENT TO HOSPTIAL

**Hospital** shall be held harmless and reimbursed in accordance with Attachment I for all services resulting in a prisoner's failure to appear for services, including but not limited to: physician services and drugs.

## 3. TERM AND TERMINATION

This Addendum is effective September 1, 2016. **Hospital** may terminate this Addendum upon 30 days advance written notification to **CORIZON**. This Addendum will automatically terminate upon termination of the Agreement.

Except as to the terms and conditions updated by this Addendum, all of the terms and conditions of the Agreement are declared by the parties to remain in full force and effect.

2

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Addendum as of the day and year first above written.

WITNESS                               **CORIZON HEALTH, INC.**

Mason Gill

_____             _____
                                    Vice President Operations

                                     _Mason Gill_        _10/3/16_
                                    Print Name and Date


_____             _____
                                    Vice President, Provider Operations

                                     _____
                                    Print Name and Date


                                    **W.A. Foote Memorial Hospital d/b/a Henry Ford
                                    Allegiance Health**

_____             _Kevin Leonard_
                                    Signature

                                     _Kevin Leonard_    _Sept 29 2016_
                                    Print Name and Date

                                     _38-2027689_
                                    SS # or Tax ID #

                                     _205 N. East Ave_
                                    Address
                                     _Jackson, MI 49201_
                                    Address

                                     _____
                                    Address

                                     _517-841-7410_
                                    Telephone Number

3

## FOURTH AMENDMENT TO HOSPITAL SERVICES AGREEMENT

### BETWEEN

### CORIZON HEALTH, INC

### AND

### W.A FOOTE MEMORIAL HOSPITAL
### d/b/a HENRY FORD ALLEGIANCE HEALTH

**THIS FOURTH AMENDMENT** (this "Addendum") is made and entered into this seventh day of November, 2016, by and between Corizon Health, Inc a Delaware corporation with principal offices located at 105 Westpark Drive, Suite 200, Brentwood, TN 37027, acting for itself or on behalf of any/all/other affiliated companies (hereinafter collectively referred to as "Corizon Health") and W.A. Foote Memorial Hospital, d/b/a Henry Ford Allegiance Health (hereinafter referred to as "Hospital") a Michigan health care provider with principal offices located at 205 N. East Avenue, Jackson, MI 49201.

### RECITALS

**WHEREAS**, Corizon Health and Hospital have entered into an Agreement dated the 13th day of June, 2011, whereby the Hospital agrees to provide health care services to inmates of the Michigan Department of Corrections (MDOC).

**WHEREAS**, Corizon Health and Hospital agree to amend the Hospital Services Agreement to add to the onsite Audiology Professional Clinic Services that Hospital has been providing for Michigan Department of Corrections Inmates at Duane Waters Health Center. This Amendment shall be effective Nov 7, 2016.

**NOW THEREFORE**, in consideration of the mutual covenants and agreements contained herein, the parties agree as follows:

The First Amendment to the Hospital Services Agreement between Corizon Health and Hospital, with an effective date of May 1, 2016, shall be stricken in its entirety, no longer having any force or effect and replaced as attached hereto;

1. **Audiology and Hearing Aid Service Rates** shall now include the following:

| Professional Services | Hourly Reimbursement Rate |
|---|---|
| Audiologist Professional | $49.86 per hour<br>(Rate shall be adjusted on an annual basis, effective January1 of each subsequent year, to incorporate a 2% inflationary increase.) |
| Audiology Tech | $26.31 per hour<br>(Rate shall be adjusted on an annual basis, effective January1 of each subsequent year, to incorporate a 2% inflationary increase.) |
| Mileage | Travel expenses to and from MDOC facilities are paid at the most current IRS mileage rate. Corizon Health shall provide expense reporting forms and processes to Audiology Professional for mileage to be paid directly to the Audiology Professional. |
| Hearing Aid / Hearing Aid Supplies | Hearing aids and hearing aid related supplies are paid at invoice cost plus administrative handling mark-up, which will be reflected in the billed amount on the monthly invoice. |

1

Onsite hearing services shall be invoiced to the following address.  Corizon shall reimburse Hospital within thirty (30) days of receipt of the invoice.

Corizon Health
Attn: Mason Gill
6452 Millennium Drive, Suite 100
Lansing, MI  48917

2.  **Medical Record Documentation** of Audiologist Professional Services provided pursuant to this Agreement shall be documented in the MDOC medical record system; Corizon shall make arrangements for appropriate access to the MDOC medical record system.  Audiology Professional shall maintain accurate and timely medical records in accordance with MDOC rules and regulations and in accordance with all federal and state laws regarding confidentiality and disclosure of protected health information in a manner which safeguards privacy.  In the event of an audit of Audiology services, Corizon and MDOC shall provide access to or provide copies of such records, upon reasonable request.

3.  **Onsite Clinic** space and appropriate office related supplies shall be arranged by Corizon and made available to Audiology Professional and Audiology Tech.  Audiology Clinic Services at Duane Waters shall be provided on days/times as mutually agreed upon in writing by the parties.

4.  Except as to the terms and conditions updated by this Amendment, all of the terms and conditions of the Agreement are declared by the parties to be in full force and effect.

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Fourth Amendment as of the day and year first above written.

**CORIZON HEALTH, INC.**

_____

Mason Gill
Vice President Operations

_____

Date

_____

M. Therese Brumfield
Vice President, Provider Operations

_____

Date

**W.A. FOOTE MEMORIAL HOSPITAL,
d/b/a Henry Ford Allegiance Health**

_____

Kevin Leonard
VP Finance

_____

Date

3

## FIFTH ADDENDUM TO HOSPITAL SERVICES AGREEMENT

### BETWEEN

### CORIZON HEALTH, INC

### AND

### W.A FOOTE MEMORIAL HOSPITAL
### d/b/a HENRY FORD ALLEGIANCE HEALTH

**THIS FIFTH ADDENDUM** (this "Addendum") is made and entered into this eleventh day of April, 2017, by and between **CORIZON** Health, Inc. a Delaware corporation with principal offices located at 105 Westpark Drive, Suite 200, Brentwood, TN 37027, acting for itself or on behalf of any/all/other affiliated companies (hereinafter collectively referred to as "**CORIZON**" or "**CORIZON HEALTH**") and W.A. Foote Memorial Hospital d/b/a Henry Ford Allegiance Health (hereinafter referred to as "**Hospital**"), a Michigan health care provider with principal offices located at 205 N. East Avenue, Jackson, MI 49201.

### RECITALS

**WHEREAS, CORIZON HEALTH** and **Hospital** have entered into a Hospital Services Agreement dated the 13th day of June, 2011 ("Agreement"), whereby the **Hospital** agrees to provide health care services to inmates of the Michigan Department of Corrections.

**WHEREAS, CORIZON HEALTH** and **Hospital** agree to amend the Agreement to now include onsite Oncology Clinic physician and nurse services for oncology patients at Duane Waters Health Center.

**NOW THEREFORE**, in consideration of the mutual covenants and agreements contained herein, the parties agree as follows:

1. The Parties agree that the Third Addendum to the Hospital Services Agreement between Corizon Health, Inc. and W.A. Foote Memorial Hospital d/b/a Henry Ford Allegiance Health, with an effective date of September 1, 2016, shall be stricken in its entirety, no longer having any force or effect and shall be replaced as attached hereto;

   **Hospital** agrees to provide onsite Oncology Clinic physician and nurse services for oncology patients at Duane Waters Health Center in accordance with the terms and conditions set forth on Attachment III as included in this Fifth Addendum. The Parties agree that the language of Attachment III shall be incorporated into the above referenced Agreement as if fully set forth.

2. The following language shall be incorporated into the above referenced Agreement as §2.7

   **Hospital** shall be held harmless and reimbursed for all scheduled services in the event that a prisoner fails to appear for services, including but not limited to: physician services and drugs.

This Addendum is effective September 1, 2016. **Hospital** may terminate this Addendum with or without cause upon 30 days advance written notification to **CORIZON**. This Addendum will automatically terminate upon termination of the Agreement.

Except as to the terms and conditions updated by this Fifth Addendum, all of the terms and conditions of the Agreement are declared by the parties to remain in full force and effect.

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Fifth Addendum as of the day and year first above written.

WITNESS

**CORIZON HEALTH, INC.**

Mason Gill

Vice President Operations

Mason Gill                4|11|17

Print Name and Date

**W.A. Foote Memorial Hospital d/b/a Henry Ford Allegiance Health**

Signature

Kevin Leonard
Print Name and Date

382029689
SS # or Tax ID #

205 N. East Ave
Address
Jackson, MI
Address
49201
Address

Telephone Number

REVIEWED
Legal Affairs
4·11·2017
KLH

ATTACHMENT III

ONCOLOGY CLINIC SERVICES

**RATES:**

| Position | Reimbursement Rate |
|---|---|
| Oncology Physician | $281.00/hour |
| Oncology Medical Director | $415.00/hour |
| Registered Nurse (RN) | $53.00/hour |
| Initial Set Up | $25,000.00/one-time fee only paid upon the opening of the clinic |
| Mileage | Travel expenses will be paid for travel between **Hospital** and MDOC facilities. These services will be paid at the most current IRS mileage rate. Mileage will be paid to **Hospital.** |
| Pharmacy | 95% of **Hospital** Charges<br><br>For the purposes of this Agreement, **Hospital** charges shall be defined as the **Hospital** charge master rate for such services. |
| IV Pump Set | $50.00 per IV Pump Set |

Invoices for oncology clinic services provided onsite at Duane Waters Health Center shall be mailed to the below address or emailed to Mason.Gill@CorizonHealth.com. **CORIZON** agrees to pay invoices within 30 days of receipt.  If payment is not made within 30 days interest will apply at the rate of 1.5% per month.

**CORIZON HEALTH**
Attn: Mason Gill
6452 Millennium Drive, Suite 100
Lansing, MI  48917

**Exclusivity:** Except as otherwise provided in this Agreement, all inpatient and outpatient oncology-related services provided to Duane Waters inmates shall be provided exclusively at **Hospital**, except when services are not available.

**Clinic Day/Hours:**  The clinic day and clinic hours when onsite oncology services shall be provided will be mutually agreed to by both parties. Initial start date of the oncology clinic will be agreed upon by the parties.

**Staffing:**
1.  **Hospital** will provide onsite Oncology Clinic physician and nurse services for oncology patients at Duane Waters Health Center.
    A.   **Hospital** shall be responsible for providing insurance coverage for its providers while they provide services pursuant to this Agreement.

2.  **CORIZON** and **Hospital** will each provide an oncology-certified RN on the agreed upon clinic days during the clinic hours. While **CORIZON's** RN is completing Oncology Certified Nurse Certification (OCN) certification, **Hospital** will provide two Oncology Nursing Society (ONS)-certified RNs on the agreed upon clinic days during the clinic hours at the expense of **CORIZON.**
    A.   The Parties agree that the RN provided by **CORIZON** shall receive training on chemotherapy administration at **Hospital** on days that are mutually agreed upon

between the Parties prior to the RN providing services at the oncology clinic at Duane Waters Health Center. **CORIZON** shall not pay any monetary compensation to **Hospital** for these training services, it being acknowledged that the training services are mutually beneficial to the Parties.

B.   **CORIZON** shall be responsible for providing adequate insurance coverage for its RN while the RN is providing services at the oncology clinic at Duane Waters Health Center and while the RN is receiving training at **Hospital.**

**Treatment Plans.** Treatment plans will be developed in accordance with nationally accepted standards of care and mutually approved by **Hospital** and **CORIZON**. Denials by **CORIZON** to oncology and radiation treatment plan, including follow-up care outlined by **Hospital,** will require notification to **Hospital** and a peer-to-peer conversation between the treating physician and **CORIZON** Oncology Director. Notification shall be by telephone followed by written letter indicating reason for denial or change in treatment plan within twenty-four hours or next business day. Dispute Resolution process as outlined in Section 10 of the Agreement will be followed when the parties do not agree regarding the denial/change in treatment plan.

**Security.** MDOC will follow the same security measures and protocols for all providers rotating through the Duane Waters Health Center. Duane Waters Health Center will include additional/relocated security cameras as agreed upon by the parties.

**IV Pump Sets.**
1. Each IV Pump Set will include a primary set and a secondary set (if applicable).
2. **Hospital** will provide primary pump set and secondary set associated with IV pumps at the reimbursement rate agreed upon above.
3. **CORIZON** agrees to provide all necessary supplies required for **Hospital** to provide oncology clinic services onsite at Duane Waters Health Center, with the exception of IV pump supplies as stated above.

**IV Pump(s).**
1. **Hospital** will provide IV pump at no cost to **CORIZON** and will maintain the pump software with the **Hospital**-approved drug library. **Hospital** shall retain ownership of any and all IV pump(s) provided pursuant to this Agreement.
2. The IV pumps will remain at Duane Waters Health Center in an effort to reduce security concerns transporting the IV Pumps. Notwithstanding the foregoing, periodically the IV pumps will be transported to **Hospital** in order to perform software updates. While the IV pumps are located at Duane Waters Health Center, the parties acknowledge and agree that the IV pumps will not be connected to the Duane Waters Health Center internet connection.
3. The IV Pumps will only be used pursuant to this Agreement by approved and trained chemotherapy clinic staff under the supervision of **Hospital** staff. In the event that an IV pump is lost and/or damaged, **CORIZON** will replace the IV pump at a cost of $7,000.00 per IV pump.
4. **CORIZON** agrees to purchase a lockbox for IV infusion bag for use with IV pump(s).

**Pharmacy Services.**
1. Drugs will be obtained and prepared by **Hospital**. For the purposes of this agreement, "drugs" will be defined as prescription medications ordered by Hospital physicians for services associated with this clinic.
2. The parties understand and agree that **Hospital** will only provide pharmacy services relating to a valid prescription from a **Hospital** provider for such drugs. In addition, the parties acknowledge and agree that drugs provided pursuant to this Agreement will not be purchased at 340B pharmacy pricing.
3. **CORIZON** will arrange for courier service to transport drugs from **Hospital** to Duane Waters Health Center. Ownership of the drugs transfers from **Hospital** to **CORIZON** upon delivery to

courier. Any issues occurring after the drugs are delivered to the courier will be addressed between the courier and **CORIZON** and are not the responsibility of **Hospital**.

4. The parties will agree on a separate list of drugs that **CORIZON** will provide directly for the clinic, which shall include antidotes, chemo spill kits, pain meds and other routine medications.

**Telemedicine.** Parties agree to partner on telemedicine services in the future.

**SIXTH AMENDMENT TO HOSPITAL SERVICES AGREEMENT**

**BETWEEN**

**CORIZON HEALTH, INC.**

**AND**

**W.A.FOOTE MEMORIAL HOSPITAL**
**d/b/a HENRY FORD ALLEGIANCE HEALTH**

**THIS SIXTH AMENDMENT** (this "Amendment") is made and entered into this 1ST day of September, 2018 by and between Corizon Health, Inc. a Delaware corporation with principal offices located at 103 Powell Court, Brentwood, TN 37027 , acting for itself or on behalf of any/all/other affiliated companies (hereinafter collectively referred to as "Corizon Health") and W.A. Foote Memorial Hospital d/b/a Henry Ford Allegiance Health (hereinafter "Hospital") a Michigan based  Hospital with principal offices located at 205 N. East Avenue Jackson, MI  49201

**RECITALS**

**WHEREAS,** Corizon Health and Hospital have entered into an Agreement dated the 13th day of June, 2011, whereby the Hospital agrees to provide health  care services to inmates of the Michigan Department of Corrections (MDOC) and

**WHEREAS,** Corizon Health and Hospital agree to amend the Hospital Services Agreement in accordance with Section 19, this Agreement may be amended in writing sign by all parties.

**NOW THEREFORE,** in consideration of the mutual covenants and agreements contained herein, the parties agree as follows:

1.  The following is added to Section 2.4

    If Hospital implements an outpatient charge increase between September 1, 2018 and August 31, 2019, the outpatient % of charge rate shall be decreased so that the charge increase does not increase reimbursement paid by CORIZON to Hospital. For example, if Hospital increases outpatient charges by 3% on 1/1/2019, the outpatient % of charge rate will be reduced from 50.0% to 48.5% (50% / 1.03) effective 1/1/2019.  This term is not intended to impact the annual inflator for fixed price items as outlined in Attachment I.

2.  Section 2.3 Timely Reimbursement is stricken in its entirety and replaced with the below:

    2.3 Timely Reimbursement:
    Corizon shall promptly reimburse Hospital within forty-five (45) days of receipt of a clean claim.  A clean claim shall be defined as a claim that contains no defect, impropriety or lack of substantiating data that prevents timely payment.  Interest for late claim payments shall be at a rate of 12% per annum.

3.  Attachment I, is stricken in its entirety and replaced with the Attachment I as included in this amendment.

4.  Except as provided herein, all of the terms and conditions of the Agreement are declared by the parties to be in full force and effect.

1

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Amendment as of the day and year first above written.

CORIZON HEALTH, INC.

Shalin Shah

_8/21/2018_

Chief Financial Officer

Shalin Shah _____
Print Name and Date


Steve Rector

Chief Executive Officer

Steve Rector _____
Print Name and Date


W.A. FOOTE MEMORIAL HOSPITAL,
d/b/a HENRY FORD ALLEGIANCE HEALTH

Signature

_Robin      Damschroder_
Print Name and Date

_382027689_
SS # or Tax ID #

_205   N. East Ave_
Address
_Jackson, MI_
Address _49201_

Address

_517-205-4800_
Telephone Number

2

## ATTACHMENT  I

### RATES
### Effective September 1, 2018

INPATIENT SERVICES:

Allegiance Health shall only admit inmates to the Secure Unit, except when the following situations exist:

1.  Inmate requires Critical Care or CUB Unit services.

2.  All beds are full on the Secure Unit.  Custody levels will be taken into consideration for priority placement on the Secure Unit.

3.  Inmate needs close observation and/or immediate interventions which cannot be provided behind a closed, locked door.

For Inpatient Health Services, **CORIZON** will reimburse **Hospital** at a base rate of $9,612.66 using Medicare MSDRG weight designations.  The base rate will be adjusted consistent with the Medicare annual market basket increase not to exceed 3 percent, effective October 1st of each year.  This annual inflator will not be affected or reduced by the Health Care Reform Act reductions or other CMS reductions annually. MSDRG weights will be adjusted consistent with the annual Medicare adjustment effective October 1st of each year.  Outliers shall be reimbursed in accordance with the methodology noted below.  Reimbursement reductions as a result of a transfer MSDRG are only applicable when inmates are transferred to another licensed Medicare facility; such as acute care hospital, long-term care hospital, rehabilitation, psychiatric or skilled nursing facility.  Reimbursement reductions shall not apply when inmates are discharged to Duane Waters Health Center or other prison facilities.

For Outliers, **CORIZON** will reimburse **Hospital** as follows:  if the amount of Billed Charges less MSDRG reimbursement is greater than $50,000, the Billed Charges exceeding the MSDRG payment will be reimbursed at forty percent (40%) of Billed Charges.

**Hospital** shall be held harmless and be reimbursed in accordance with this Section for inpatient hospital days resulting in inability to discharge inmate due to **Facility** procedural issues, such as lack of guards or transportation to transfer inmate back to **Facility**.

As the CMS MSDRG numeric assignment system changes and converts MSDRGs to newly developed grouper numbers, rates specified in this Agreement will remain as is. **CORIZON** will crosswalk the expired MSDRG to the new MSDRG, per CMS and process the claim.

OUTPATIENT SERVICES:

Emergency Room:

**Corizon** will reimburse **Hospital** at 50.0% of Billed Charges.
Any ER visit, which results in an inpatient admission, will be reimbursement under the applicable inpatient reimbursement.

Diagnostic Services:

MRI case rates per test:
- Without contrast               $   780.13
- With contrast                  $   956.90
- With and without contrast      $1,206.69

CT Scan case rates per test
- Without contrast               $435.54
- With contrast                  $689.18
- With and without contrast      $763.47

The above rates do not apply to MRA and CTA services.

Effective September 1st of each year, an automatic annual CPI inflator of 3% shall apply to the above fixed price items. The Parties agree the first annual inflator will be applied on September 1, 2019.

SURGICALLY IMPLANTABLE ITEMS:

For outpatient surgery, any implantable item shall be reimbursed at 100% of billed plus 1.25% for mark-up. Invoice is not required; however, **Hospital** must submit the appropriate CPT/HCPC code on the claim so billed amount may be verified.

All Other Outpatient Services:

**CORIZON** will reimburse **Hospital** at 50.0% of Charges for all outpatient services with the exception of the MRI and CT Scan aforementioned.

PROFESSIONAL SERVICES:

Professional services provided by employed or contracted physicians pursuant to Section 2.2(d) shall be reimbursed at one hundred and thirty percent (130%) of the applicable year, geographically adjusted CMS professional fee schedule.

Professional services provided by employed audiologists shall be reimbursed at one hundred and thirty percent (130%) of the applicable year, geographically adjusted CMS professional fee schedule. Dispensing fees shall be reimbursed as follows:

| | |
|---|---|
| V5014 | $220.34 |
| V5241 | $715.55 |
| V5264 | $102.64 |
| V5267 | $39.48 |

4

Professional therapy services provided by employed therapists provided at the Duane Waters specialty clinic shall be reimbursed as follows:

| | |
|---|---|
| Physical therapy services | $78.96 per hour |
| Physical therapy assistant or athletic trainer services | $46.06 per hour |
| Occupational therapy services | $55.27 per hour |

Effective September 1st of each year, an automatic annual CPI inflator of 3% shall apply to the above fixed price items. The Parties agree the first annual inflator will be applied on September 1, 2019.

DME and ORTHOTIC SERVICES:

Durable Medical Equipment and orthotic services shall be reimbursed at 100% of the then current year Medicare fee schedule.

ONCOLOGY CLINIC SERVICES – will be reimbursed as reflected in the Fifth Amendment effective September 1, 2016.

AUDIOLOGIST PROFESSIONAL SERVICES – will be reimbursed as outlined in the Fourth Amendment effective November 7, 2016.

*THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK*

SEVENTH AMENDMENT TO HOSPITAL SERVICES AGREEMENT

BETWEEN

CORIZON HEALTH, INC.

AND

W.A. FOOTE MEMORIAL HOSPITAL d/b/a HENRY FORD ALLEGIANCE HEALTH

THIS SEVENTH AMENDMENT (this "Amendment") is made and entered into this 1st day of November, 2019, by and between Corizon Health, Inc. a Delaware corporation with principal offices located at 103 Powell Court, Brentwood, TN 37027 , acting for itself or on behalf of any/all/other affiliated companies (hereinafter collectively referred to as "Corizon Health") and W.A Foote d/b/a Henry Ford Allegiance Health (hereinafter "Hospital") a Michigan based Hospital with principal offices located at 205 N. East Avenue Jackson, MI 49201.

RECITALS

WHEREAS, Corizon Health and Hospital have entered into an Agreement dated the 13th day of June, 2011, whereby the Hospital agrees to provide health care services to inmates of the Michigan Department of Corrections; and

WHEREAS, Corizon Health and Hospital agree to amend the Hospital Services Agreement.

NOW THEREFORE, in consideration of the mutual covenants and agreements contained herein, the parties agree as follows:

ATTACHMENT I for INPATIENT SERVICES shall also include:

1. In cases where Hospital has Inpatient Facility Claims that have been denied by Medicaid and the patient is Medicaid eligible. The Parties agree that Corizon Health will be responsible for payment. Hospital will bill Corizon Health with the applicable Medicaid denial. Corizon Health agrees to reimburse Hospital in accordance with the below terms for the Medicaid denied claims:
   a. Services denied due to provider not enrolled in Medicaid will be paid at the prevailing Michigan Medicaid rate.
   b. Services denied for a Medicaid readmission denial will be paid in accordance with the Corizon reimbursement rate for Inpatient Health Services.

2. Except as to the terms and conditions updated by this Amendment, all of the terms and conditions of the Agreement are declared by the parties to be in full force and effect.

*THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK*

1

IN WITNESS WHEREOF, the parties hereto have duly executed this Amendment as of the day and year first above written.

CORIZON HEALTH, INC.

Michael Murphy

SVP State Corrections

Michel Murphy     12/20/19
Print Name and Date

Shalin Shah

Chief Financial Officer

Shalin Shah     12-24-19
Print Name and Date

W.A FOOTE MEMORIAL HOSPITAL
d/b/a HENRY FORD ALLEGIANCE HEALTH

Signature

Robin Dauschroder
Print Name and Date

382022689
SS # or Tax ID #

205 N. East Ave
Address
Jackson, MI 49201
Address

Address

517-205-4800
Telephone Number

2